IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

IVAR VOITS,

          Petitioner,

    v.

N. NOOTH, Superintendent,
SRCI,

          Respondent.

Civil No. 3:08-cv-232-AC

FINDINGS AND RECOMMENDATION

KRISTINA HELLMAN
Assistant Federal Public Defender
101 S.W. Main Street
Suite 1700
Portland, OR 97204

      Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
KRISTEN E. BOYD
Assistant Attorney General
Department of Justice
101 Court Street N.E.
Salem, OR 97301

      Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at the Snake River Correctional Institution, brings this habeas corpus

action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition for Writ of Habeas

Corpus should be DENIED.

## PROCEDURAL BACKGROUND

On February 26, 1999, a Washington County grand jury indicted Petitioner on one count

of Murder with a Firearm. The case was tried to a jury, who found Petitioner guilty. The trial judge

sentenced Petitioner to life with a minimum of 25 years of imprisonment.

Petitioner appealed, and the Oregon Court of Appeals affirmed in a written opinion. *State

v. Voits*, 186 Or. App. 643, 64 P.3d 1156 (2003). The Oregon Supreme Court denied a petition for

review, and the United States Supreme Court denied a petition for writ of certiorari. *State v. Voits*,

336 Or. 17, 77 P.3d 320, *cert. denied*, 541 U.S. 1058 (2004).

Petitioner then filed a petition for state post-conviction relief ("PCR"). Following an

evidentiary hearing, the PCR trial judge denied relief. On appeal, the Oregon Court of Appeals

affirmed the denial of PCR relief without opinion, and the Oregon Supreme Court denied review.

*Voits v. Hill*, 215 Or. App. 703, 170 P.3d 1137 (2007), *rev. denied*, 344 Or. 43, 178 P.3d 247

(2008).

On February 5, 2008, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in this

action.[1]   In it, Petitioner alleges four claims for relief:

**Ground One:** Petitioner is <u>actually innocent</u> under Oregon law.  No reasonable
juror would convict petitioner of murder if they had heard all available evidence,

---

[1]The Court subsequently appointed counsel to represent Petitioner.

2 - FINDINGS AND RECOMMENDATION -

including evidence that developed subsequent to his trial, & was not presented to the jury. As petitioner is actually innocent his conviction & sentence violates due process and the prohibition against cruel & unusual punishment, as guaranteed by the 5th, 8th & 14th Amendments to the United States Constitution.

**Supporting Facts:** The evidence considered by the jury at trial did not accurately reflect the relevant facts existing at the time of trial. Petitioner's plea of innocence is buttressed by his MOTION FOR NEW TRIAL (dated 4/23/2004 & filed 5/02/2004 & which petitioner incorporates hereto by this reference), which totally destroys the plausibility of the state's proffered motive & case-in-chief at trial, putting a new perspective on decedent's paranoid state-of-mind, immediately prior to her death. Furthermore, petitioner incorporates the allegations contained herein & those asserted during the prosecution & during his post-conviction proceedings (including his post-conviction, PETITIONER'S (PRO SE) TRIAL MEMORANDUM, dated 6/30/2005), also incorporated hereto by this reference).

Petitioner unequivocally asserts that he did not commit the crime alleged in the indictment leading to his prosecution.

**Ground Two:** Petitioner was denied due process & fair trial rights guaranteed by the 5th, 6th & 14th Amendments of the United States Constitution, when the trial court blatantly & indiscriminately admitted statements made by a non-testifying witness, creating a trial by hearsay, leaving petitioner void of <u>Confrontation Clause</u> protection.

**Supporting Facts:** The cumulative effect of the voluminous hearsay evidence, presented at trial, created a highly prejudicial effect, one that rose to the level of a due process violation. The court's decision (especially post-conviction & higher courts) denying relief was blatantly contrary to, and of, clearly established federal (also state) law, namely the U.S. Supreme Court's <u>CRAWFORD</u> Confrontation Clause decision. Additionally, the state did not conduct a "full, fair & adequate hearing" at post-conviction, instead relying on a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, also evidence by the state Appellate & Supreme Court's denial of any review. The facts are supported by PETITIONER'S (PRO SE) TRIAL MEMORANDUM (dated June 30, 2005)- from the post-conviction proceedings - & supplemented by <u>Appendix 2</u>, incorporated hereto by this reference.

**Ground Three:** <u>Ineffective assistance of counsel</u>. Petitioner was denied rights guaranteed by the 6th & 14th Amendments of the United States Constitution, when trial counsel failed to, but limited to, adequately investigate.

**Supporting Facts:** Counsels' failures caused great prejudice to petitioner, which resulted in his witnesses for trial, i.e., [(a)] petitioner's sons who would have been able to testify & would have, about the decedent's depression & mental meltdown, corroborating petitioner's version of events & [(b)] also to refute state's fabricated

but damning 'sweater' evidence. [(c)] Counsel failed to produce evidence of the decedent's adultery & resultant dilemma caused by the impending discovery of her acquired STD, at trial, on her state-of-mind. [(d)] Counsel failed to impeach key state's witnesses for knowing use of false evidence & testimony at trial. [(e)] Appellate counsel failed to adequately plead all available errors on appeal.[2] See Appendix 1, p. 6-10 & Appendix 2, p. 4-10, 12-13 for more details. Also see Petitioner's (Pro Se) Post-Conviction Trial Memorandum (dated 6/30/2005) which petitioner incorporates hereto by this reference.

**Ground Four:** Prosecutorial & Police Misconduct. Petitioner was denied rights guaranteed by the 4th, 5th, 6th, & 14th Amendments of the United States Constitution when prosecutorial & police misconduct denied petitioner due process, equal protection under the law & ultimately a fair trial.
**Supporting Facts:** Prosecutor's use of fabricated evidence (e.g., the bogus 'sweater' issue) was the deliberate deception of the court & jurors by the presentation of evidence known to be false. The withholding of alleged victim's blood tests, which would have revealed her STD problem at time of trial. The use of mendacious testimony by key state's witnesses, MIRANDA interrogation violations, of petitioner, coupled with blatant 4th Amendment of the United States Constitutions search & seizure violations, all condoned by a biased & prejudiced Judge Gardner (as evidenced by his statement in court of: "I think he's [petitioner] guilty too") supported by a police investigation biased from the start & aimed ad implicating the petitioner [perpetrated by a corrupt Tualatin police department implicated in a major integrity scandal. (See details at Appendix 2, p. 8, lines 4-16). These same rogue police officers were involved in petitioner's case & instrumental in the conviction of an innocent person, namely the petitioner.

Respondent argues Petitioner's Ground Four fails to state a claim upon which habeas corpus

relief may be granted as Petitioner had a full and fair opportunity to litigate the claim in state court.

Respondent further argues Petitioner procedurally defaulted the claims alleged in Ground One,

Ground Two, sub-parts (d) and (e) of Ground Three, and Ground Four. Finally, Respondent argues

Petitioner is not entitled to relief on the claims alleged in sub-parts (a), (b), and (c) because the

---

[2] The Court designated the sub-parts of Petitioner's Ground Three claim by letter for ease of reference herein.

Oregon state court decisions denying relief on these claims were neither contrary to nor an unreasonable application of clearly established Supreme Court law.

In the Brief in Support of Petition submitted by counsel, Petitioner argues only one issue: that the introduction of the victim's hearsay statements through the reading into the record  the contents of 42 letters and postcards written by the victim violated Petitioner's rights under the Confrontation Clause.  Petitioner sought and the Court granted leave for Petitioner to file a Supplemental *Pro Se* Brief in which Petitioner addresses the remaining claims for relief.

## SUMMARY OF FACTS

Petitioner moved to the Portland area in 1996.  His wife and two children followed in 1997. In August 1998, Petitioner's wife became romantically involved with another man, Vilnis Sils, and began communicating with him by letter and phone.  Starting in September 1998, Petitioner's wife began writing to her family and friends about her desire to divorce petitioner, her happiness with Sils, and her hopes and fears for a better future.  On December 15, 1998, Petitioner's wife caused divorce papers to be served on petitioner.

On the morning of January 3, 1999, Petitioner called 9-1-1 to report that his wife was dead. Three paramedics were dispatched to the residence.  Because of the way the 9-1-1 call was dispatched, they were expecting a cardiac case, like a heart attack.  When they entered the bedroom, a bedspread covered Mrs. Voits' body, her head, and some pillows underneath and above her head. When the paramedics pulled the bedspread back they saw a large amount of blood around Mrs. Voits' head and a firearm lying between her arm and side.  They called the police.

When the officers arrived at the scene, they entered the front door and found Petitioner speaking with medical response personnel. Petitioner told the officers that when he woke up that morning, he touched his wife's hand and found her dead next to him in bed; apparently from committing suicide the night before. The officers asked permission to go upstairs to see the body and Petitioner verbally consented.

Once upstairs, the officers observed several items inconsistent with a suicide: two gunshots to the head, the gun found in a cocked position which would be difficult for someone to do after a fatal gunshot, and blood spatter evidence on pillows, wall, carpet, and clothing which was at odds with a suicide gunshot. The officers photographed the scene and called for an investigative team. Petitioner was presented with a written consent to search form, which he signed. The officers and other investigators searched the residence and seized various items.

Officers returned to Petitioner's home the next day. Petitioner invited the officers in, signed another written consent to search, and consented to interviews of himself and his children.

On January 8, 2013, Petitioner contacted the police to discuss the investigation. This resulted in another interview at the residence, during which officers told Petitioner for the first time that they believed he had killed the victim.

On January 9, 2013, Petitioner went to the Washington County Sheriff's Office. Officers advised him of his *Miranda* rights and he signed a written waiver of those rights. Officers interviewed him for three hours.

On January 14, 1999, officers obtained a search warrant for Petitioner's residence and workplace. On January 15, 1999, officers executed the warrant. When police arrived at Petitioner's

home, Petitioner again gave verbal consent to the search.  On March 1, 1999, police arrested Petitioner and charged him with murder.

Petitioner's defense at trial was that Mrs. Voits had committed suicide.  The prosecution presented expert testimony that the physical evidence was inconsistent with suicide.  The victim was found with two gun-shot wounds to her head, and the gun next to her was found with the hammer in a de-cocked position.  The state's expert testified that this particular type of firearm had to be manually de-cocked, which would have been impossible for the deceased victim.  Expert testimony also reflected that the blood spatter patterns did not support a suicide, nor the angle at which the gun appeared to have been fired.  Also, the victim's blood was found on one of Petitioner's sweaters.

In addition to the physical evidence, the prosecution introduced evidence of Mrs. Voits' state of mind as inconsistent with suicide.  The prosecution introduced several of Mrs. Voits' letters and postcards to friends and family as well as statements she made to friends and family.  Petitioner's defense counsel vigorously challenged the introduction of the letters and statements.  After an extensive pretrial hearing, the trial court disagreed with most of the defense's arguments.  The trial judge did, however, go through each of the proffered letters and postcards and redacted inadmissible contents.  The trial judge also instructed the jury about the proper use of the evidence for state of mind purposes only.

Petitioner presented his own expert testimony and evidence that the physical evidence could have been consistent with suicide.  Petitioner also presented witnesses who testified that he told them the his wife was suicidal and had emotional problems, that she was depressed, and that she

was seeing a psychiatrist and taking psychiatric medication.  Petitioner also availed himself of the

opportunity to testify.  As noted, however, the jury found Petitioner guilty as charged.

### DISCUSSION

**I.    Failure to State a Claim**

In a portion of his Ground Four claim, Petitioner alleges his Fourth Amendment search and

seizure rights were violated.  In *Stone v. Powell*, 428 U.S. 465, 494 (1976), the Supreme Court held

that a habeas petitioner may not be granted relief on the ground that evidence obtained in an

unconstitutional search or seizure was introduced at trial if the state courts provided a full and fair

opportunity to litigate the Fourth Amendment claim.  *See also Terrovona v. Kincheloe*, 912 F.2d

1176, 1178 (9th Cir. 1990).  The relevant inquiry under *Stone* is whether the petitioner had the

opportunity to litigate his claim, not whether he in fact did so or even whether the claim was

correctly decided.  *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

Here, Petitioner received a full and fair opportunity to litigate his Fourth Amendment claims

at the trial level and on direct appeal.  The trial court conducted extensive pretrial hearings on

Petitioner's motions to suppress, and the Oregon Court of Appeals issued a detailed opinion on the

matter which included specific findings in support of their determination that the trial court did not

err in denying Petitioner's motions to suppress evidence obtained in the searches of his residence.

*State v. Voits*, 18 Or. App. at 650-52.  Accordingly, to the extent Petitioner's Ground Four alleges

an illegal search and seizure claim under the Fourth Amendment, it is not cognizable in a § 2254

habeas corpus action.

## II.    Ground One - Actual Innocence

In Ground One, Petitioner alleges he is actually innocent of the crime of murder.  Claims

of actual innocence generally arise in two circumstances:  (1) as a fundamental injustice to excuse

the procedural default of another claim, and (2) as a freestanding claim of actual innocence.

In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court addressed the process by which

state prisoners may prove "actual innocence" so as to excuse a procedural default.  The Court

explained that in order to be credible, a claim of actual innocence "requires petitioner to support

his allegations of constitutional error with new reliable evidence -- whether it be exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not

presented at trial." *Id.* at 324; *Downs v. Hoyt*, 232 F.3d 1031, 1040 (9th Cir. 2000), *cert. denied*,

532 U.S. 999 (2001).

The Ninth Circuit held that "habeas petitioners may pass *Schlup's* test by offering 'newly

presented' evidence of innocence," meaning evidence that was not before the trial court. *Griffen*

*v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003), *cert. denied*, 541 U.S. 998 (2004).  In determining

whether a petitioner is actually innocent, this court "must assess the probative force of the newly

presented evidence in connection with the evidence of guilt adduced at trial. *Schlup* 513 U.S. at

332.  Ultimately, a petitioner must prove that it is more likely than not that no reasonable juror

would have found him guilty beyond a reasonable doubt. *Id.* at 327; *Bousley v. United States*, 523

U.S. 614, 623 (1998).

Here, the "new" evidence Petitioner relies upon is twofold:  (1) the discovery after he was

incarcerated that he had contracted a sexually transmitted disease ("STD"); and (2) a loss of

credibility of officers from the Tualatin Police Department who investigated his crime and testified at his trial.

Petitioner argues he must have contracted the STD from his wife, and that if the jury heard this evidence they would have concluded his wife committed suicide out of fear Petitioner would discover she had an adulterous affair. Petitioner does not, however, present any evidence to demonstrate a causal connection between his STD and his wife. Moreover, as the PCR trial judge noted, presentation of this evidence to a jury could have had the opposite effect. The jury could have found that it was a reason for Petitioner to be upset with the victim and want to kill her. Resp. Exh. 127, p. 36.

Petitioner also argues a media investigation of the Tualatin Police Department in May 2006 which resulted in reports of corruption in the Department, if disclosed to the jury, would have sufficiently undermined the credibility of the officers who investigated and testified such that no juror would have found Petitioner guilty. Petitioner contends the officers fabricated statements Petitioner made to them, and that jurors would not have found the fabricated statements plausible had they known about the corruption in the Department.

Even if Petitioner could establish that the media reports of corruption in the Tualatin Police Department would have impeached the credibility of the officers who investigated and testified, it would not rise to the level of new evidence the Ninth Circuit has previously found to satisfy the *Schlup* standard. *Compare Carriger v. Stewart*, 132 F.3d 463, 471-72, 478-79 (9th Cir. 1997) (en banc) (holding that the petitioner satisfied the *Schlup* standard where the prosecution's chief witness against the petitioner, who had been convicted and sentenced to death for murder, later confessed

10 - FINDINGS AND RECOMMENDATION -

in open court that he was the murderer and that he had framed the petitioner) with *Sistrunk v. Armenakis*, 292 F.3d 669, 673-76 (9th Cir. 2002) (en banc) (holding that the petitioner could not pass through the *Schlup* gateway where new evidence presented by the petitioner, who had been convicted of raping an eleven-year-old girl, revealed inaccuracies in the expert's testimony and had some impeachment value related to the victim's testimony). The alleged corruption in the Tualatin Police Department is not direct evidence of Petitioner's actual innocence; instead, it is the type of "speculative, collateral impeachment [evidence that] falls far short of showing actual innocence." *Ganderela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002), *cert. denied*, 537 U.S. 1117 (2003). Accordingly, Petitioner fails to establish a fundamental miscarriage of justice to excuse procedural default.

Petitioner also argues Ground One as a freestanding claim of actual innocence. Even assuming a freestanding claim of innocence is cognizable in a non-capital case, *see House v. Bell*, 547 U.S. 518, 554-55 (2006), *Herrera v. Collins*, 506 U.S. 390, 417 (1993), Petitioner has failed to meet the "extraordinarily high" threshold for a freestanding claim. *Herrera* claims require a greater showing of innocence than *Schlup* gateway claims. *House v. Bell*, 126 S.Ct. at 2087. Because Petitioner is not able to meet the *Schlup* gateway showing of actual innocence to excuse his procedural default, he is unable to succeed on his *Herrera* claim. Accordingly, Petitioner is not entitled to habeas corpus relief on a freestanding claim of actual innocence.

### III.    Procedural Default

A habeas petitioner must exhaust his claims by presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the

merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915–916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

When a state prisoner fails to exhaust his federal claims in state court and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted. *Casey*, 386 F.3d at 920; *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991). Similarly, if a federal constitutional claim is expressly rejected by a state court on the basis of a state procedural rule that is independent of the federal question and adequate to support the judgment, the claim is procedurally defaulted. *Coleman*, 501 U.S. at 750; *Cook v. Schriro*, 538 F.3d 1000, 1025 (2008), *cert. denied*, 555 U.S. 1141 (2009).

Under the independent and adequate state rule doctrine, federal habeas review is prohibited when a state court declined to address a prisoner's federal claims on the ground that the prisoner failed to meet a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977). A state procedural rule constitutes an adequate procedural bar if it was "firmly established and regularly followed" at the time the rule was applied by the state court. *Ford v. Georgia*, 498 U.S. 411, 424 (1991); *Poland v. Stewart*, 169 F.3d 573, 585 (9th Cir.), *cert. denied*, 528 U.S. 845 (1999).

If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

### B.    Ground Two - Confrontation Clause

In his direct appeal, Petitioner alleged three assignments of error pertaining to the admission of hearsay statements from the victim. Petitioner asserted the trial court erred in admitting personal letters and postcards written by the deceased and verbal hearsay statements the victim made to two witnesses. Petitioner argued the admission of the hearsay statements was contrary to Oregon Evidence Code Rule 803(3) as statements of then existing state of mind, or future intent.

Petitioner also argued their admission violated his rights under the Confrontation Clause. Petitioner recited the pertinent test for determining whether the Confrontation Clause was violated, and argued the statements admitted by the trial judge did not possess sufficient "indicia of reliability." Resp. Exh. 103, pp. 29-45.

Petitioner also argued, in passing, that "[a]dmission of the hearsay statements violated [petitioner's] right to due process and a fair trial. Or. Const. Article 1, section 11; US Const. Amend V; XIV. The cumulative effect of the voluminous hearsay evidence created a highly prejudicial effect on that [sic] rose to the level of a due process violation. Id." Resp. Exh. 103, p. 45.

In a written opinion, the Oregon Court of Appeals discussed at some length the admissibility of the statements and letters under Rule 803(3). The Court of Appeals examined the statements and concluded that much of the evidence in question was not hearsay because it was not offered to prove the truth of the matter asserted. With respect to that evidence which was hearsay, the court found it fell within the state-of-mind exception to the hearsay rule.

The Court of Appeals then turned to Petitioner's Confrontation Clause and due process claims:

> Finally, we consider defendant's contention that admission of the challenged declarations violated his right to confront witnesses under Article I section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution.[13] We first consider defendant's argument under Article I, section 11. The admission of hearsay under an exception to the hearsay rule does not violate a defendant's constitutional right of confrontation under Article I, section 11, if the state demonstrates that the declarant is unavailable and the evidence has "adequate indicia of reliability." *State v. Moore*, 334 Or. 328, 333–34, 49 P.3d 785 (2002) (providing overview of state and federal constitutional standards and setting out two-part test). The second requirement is satisfied if the evidence was admitted under a "firmly rooted" hearsay exception. *Id.* at 334. Here, of course, only the second requirement arguably is in dispute.
>
> Defendant does not argue that [Or. Evid. C.] 803(3), the applicable hearsay exception, is not firmly rooted for confrontation purposes, nor does he explain why the challenged evidence does not possess adequate indicia of reliability. Accordingly, we decline to further consider defendant's undeveloped argument under Article I, section 11. For the same reason, we reject defendant's argument under the Sixth Amendment. He has failed to explain why, if the declarations are admissible under [Or. Evid. C.] 803(3), they do not fall either within a firmly rooted hearsay exception or otherwise bear adequate indicia of reliability to satisfy the requirements of the Confrontation Clause. *See Idaho v. Wright*, 497 U.S. 805, 816 (1990) (describing Sixth Amendment confrontation requirements).
>
> > [13]We decline to address defendant's separate due process and fair trial arguments because he has not provided any developed argument regarding those claims. *State v. Barone*, 329 Or. 210, 233 n. 15, 986 P.2d 5 (1999), *cert. denied*, 528 U.S. 1086 (2000) (declining to

> address undeveloped claim of constitutional error and noting that
> mere invocation of a constitutional provision, "unaccompanied by
> substantial argument or any reference to authority, is insufficient to
> provide [this court] a meaningful basis to review any specific
> constitutional question").

*State v. Voits*, 186 Or. App. 643, 661-62 (2003).

Respondent contends Petitioner procedurally defaulted his Confrontation Clause claim

because he failed to fairly present the issue for the Court of Appeals to review. According to

Respondent, the Court of Appeals' statement that they "decline to further consider [petitioner's]

argument under the Sixth Amendment" is indicative of a rejection of the claim on purely procedural

grounds. If the claim was rejected based on an independent and adequate procedural basis by the

Oregon Court of Appeals, then the claim was never properly before the Oregon Supreme Court on

petition for review and was procedurally defaulted.

This court disagrees. While the Oregon Court of Appeals did not address the Confrontation

Clause at length, the court did articulate the constitutional standard for such a claim and declined

to "further consider" Petitioner's argument because he did not provide an articulated reason why the

statements failed to satisfy that standard. By contrast, with respect to Petitioner's separate due

process and fair trial arguments, the court declined "to address" them whatsoever. Accordingly,

it appears the Oregon Court of Appeals considered and rejected Petitioner's Confrontation Clause

claim on the merits.

**C.    Ground Three(d) - Ineffective Assistance of Trial Counsel for Failure to Impeach Expert Witness**

Respondent argues Petitioner procedurally defaulted the ineffective assistance of trial counsel claim alleged in sub-part (d) in Ground Three. In Ground Three(d), Petitioner alleges trial counsel "failed to impeach key state's witnesses for knowing use of false evidence & testimony at trial."

In his Formal Petition for Post-Conviction Relief in the state PCR proceedings, Petitioner alleged trial counsel was ineffective because he "[f]ailed to impeach OSP forensic evidence that petitioner was wearing a sweater. Petitioner was actually wearing a blue shirt at the time in question." Resp. Exh. 111, p. 3. In response to this claim, the State offered an affidavit from Petitioner's trial counsel, who explained:

> On or about December 6, 1999, and March 23, 2000, we filed a motion in limine to limit the state's use of scientific evidence, including evidence pertaining to the sweater. This evidence was also examined by our forensic expert. The admissibility of the evidence was litigated prior to trial as part of an extended omnibus hearing.
>
> We attempted to impeach the state's theory that petitioner was wearing the blue sweater. The only evidence available for such impeachment was petitioner's testimony.

Resp. Exh. 120, pp. 3-4.

In his brief on appeal from the denial of PCR relief, Petitioner argued:

> It was assumed during trial that petitioner was wearing a sweater which was found at the scene. In truth, petitioner was wearing a blue shirt. His attorney should have impeached the state's expert forensic witness with this information, because the expert testified that the victim's blood was found on the sweater. According to defense counsel, the only evidence available to show petitioner was not wearing the sweater was his own testimony.

Resp. Exh. 129, p. 5. Petitioner argued the issue further at pp. 14-15 of his appellate brief.

In his formal Petition for Review to the Oregon Supreme Court, Petitioner's counsel argued the trial attorney was ineffective because he "ignored important physical evidence" and "failed to investigate petitioner's shirt, which he was wearing during the course of time this incident was said to have occurred." Resp. Exh. 131, p. 3. In a *pro se* argument attached to the Petition for Review, Petitioner discussed at some length why counsel was ineffective for impeaching the state's forensic evidence witness with respect to the sweater. Resp. Exh. 131, *Pro Se* Argument in Support of Petition, pp. 6-8.

To the extent the claim alleged in Ground Three(d) before this Court is construed to allege trial counsel provided ineffective assistance of counsel by failing to impeach the state's forensic evidence witness regarding the sweater, Petitioner fairly presented this claim to the highest state court. Accordingly, the claim is not procedurally defaulted and will be addressed on the merits below.

**D.    Ground Three(e) - Ineffective Assistance of Appellate Counsel**

In sub-part (e) of Ground Three, Petitioner alleges appellate counsel provided ineffective assistance of counsel on direct appeal because he "failed to adequately plead all available errors on appeal." In his Formal Petition for Post-Conviction Relief, Petitioner alleged appellate counsel was ineffective in six particulars. Resp. Exh. 111, p. 4. In his appellate brief, however, Petitioner addressed only ineffective assistance of trial counsel claims; he did not assign as error or argue any ineffective assistance of appellate counsel claims. Resp. Exh. 127. He also did not address any

ineffective assistance of appellate claims in his Petition for Review or the *Pro Se* Argument in Support of Petition appended thereto.

Petitioner did not fairly present his ineffective assistance of appellate counsel claim(s) to Oregon's highest court, and he is barred by state procedural law from now doing so. As such, subpart (e) of Ground Three is procedurally defaulted. Because Petitioner has not presented evidence of cause and prejudice or a fundamental miscarriage of justice sufficient to excuse his procedural default, habeas corpus relief on this claim should be denied.

### E.    Ground Four - Prosecutorial and Police Misconduct

In addition to his Fourth Amendment search and seizure claims alleged in Ground Four, Petitioner also alleges claims against the prosecution and police officers for misconduct. Petitioner did allege claims of prosecutorial and police misconduct in his Formal Petitioner for State Post-Conviction Relief. In his appellate brief and petition for review, however, Petitioner did not assign as error the PCR trial judge's denial of relief on these claims.

Petitioner failed to present his claims of prosecutorial and police misconduct to the highest state court, and he is precluded from now doing so. Accordingly, the prosecutor and police misconduct claims alleged in Ground Four are procedurally defaulted. Because Petitioner has not established cause and prejudice or a fundamental miscarriage of justice to excuse his procedural default, habeas corpus relief should be denied.

### III.    Relief on the Merits

An application for a writ of habeas corpus shall not be granted unless the adjudication on the merits in State court was:

(1) contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 529 U.S. 362, 386–389 (2000), the Supreme Court construed this provision as requiring federal habeas courts to be highly deferential to the state court decisions under review. In *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398–1402 (2011), the Court reiterated the highly deferential nature of federal habeas review, and limited federal review "to the record that was before the state court that adjudicated the claim on the merits."

A state court decision is "contrary to" clearly established federal law if it is "in conflict with," "opposite to," or "diametrically different from" Supreme Court precedent. *Williams*, 529 U.S. at 388. An "unreasonable application" of clearly established Supreme Court law occurs when "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the . . . case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (citing *Williams*, 529 U.S. at 413), *cert. denied*, 546 U.S. 963 (2005).

A federal court making an "unreasonable application" inquiry should ask whether the state court's application of federal law was objectively unreasonable. *Williams*, 529 U.S. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (internal citations omitted). Instead, "a habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that

those arguments or theories are inconsistent with the holding in a prior decision of this Court."

*Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). "A state court's determination that a claim lacks

merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

A habeas petition may also obtain relief if the state courts' decision was "based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d)(2). Federal courts must presume the correctness of the state

court's factual findings, but a habeas petitioner may rebut the presumption by clear and convincing

evidence. 28 U.S.C. § 2254(e)(1); *Winzer v. Hall*, 494 F.3d 1192, 1196 (9th Cir. 2007).

The last reasoned decision by the state court is the basis for review by the federal court. *See*

*Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3

(9th Cir. 2002). A state court need not, however, provide its rationale before its decision can be

deemed an adjudication on the merits. *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir.) (citing

*Harrington*, 131 S.Ct. at 785-86), *pet'n for cert. filed*, 82 U.S.L.W. 3082 (July 29, 2013). "Under

§ 2254(d), a habeas court must determine what arguments or theories supported or, as here, could

have supported, the state court's decision; and then it must ask whether it is possible fairminded

jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

decision of this Court." *Harrington,* 131 S.Ct. at 786 (emphasis added).

"It remains the petitioner's burden to demonstrate that 'there was no reasonable basis for the

state court to deny relief.'" *Walker*, 709 F.3d at 939 (quoting *Harrington*, 131 S.Ct. at 784). As

such, when the state court does not supply reasoning for its decision," district courts are instructed

to engage in an "independent review of the record" and ascertain whether the state court's decision was "objectively unreasonable." *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). "[T]his is not a *de novo* review of the constitutional question." *Walker*, 709 F.3d at 939 (citing *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003)). Instead, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S.Ct. at 786.

### A.    Ground Two - Confrontation Clause

Petitioner contends the admission of the victim's letters and postcards written to family and friends violated his rights under the Sixth Amendment's Confrontation Clause. As noted, Respondent argued Petitioner procedurally defaulted this claim. Respondent also offered an alternative argument that Petitioner's Confrontation Clause claim should be denied on the merits, so the issue is fully briefed and properly before the Court.

As an initial matter, the Court must decide the parameters of the "clearly established Federal law as determined by the Supreme Court," against which the Oregon Court of Appeals' decision must be measured. *Thompson v. Runnels*, 705 F.3d 1089, 1091 (9th Cir.), *pet'n for cert. filed*, No. 13-5127 (June 28, 2013).

Section 2254(d)'s "backward-looking language requires an examination of the state-court decision at the time it was made." *Greene v. Fisher*, 132 S.Ct. 38, 44 (2011) (internal quotation marks omitted). It "requires federal courts to focu[s] on what a state court knew and did," so "clearly established Federal law" includes only Supreme Court decisions "*as of the time the state court renders its decision.*" *Id.* (internal quotation marks omitted) (emphasis and alteration in original); *Meras v. Sisto*, 676 F.3d 1184, 1187 (9th Cir. 2012).

The Confrontation Clause of the Sixth Amendment provides that, in criminal cases, the accused has the right to "be confronted with witnesses against him." U.S. Const. Amend. VI. Under *Ohio v. Roberts*, 448 U.S. 56 (1980), "the Confrontation Clause permitted the admission of a hearsay statement made by a declarant who was unavailable to testify if the statement bore sufficient indicia of reliability, either because the statement fell within a firmly rooted hearsay exception or because there were 'particularized guarantees of trustworthiness.'" *Whorton v. Bockting*, 549 U.S. 406, 412 (2007) (quoting *Roberts*, 448 U.S. at 66). On March 8, 2004, however, the Supreme Court issued its opinion in *Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford*, the Supreme Court "overruled *Roberts* and held that '[t]estimonial statements of witnesses absent from trial' are admissible 'only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine [the witness].'" *Bockting*, 549 U.S. at 413 (quoting *Crawford*, 541 U.S. at 59).

The Oregon Court of Appeals issued their opinion in Petitioner's case on March 6, 2003, and the Oregon Supreme Court denied review on September 24, 2003. Resp. Exhs. 105, 107. The appellate judgment issued on October 28, 2003. Petitioner filed a petition for writ of certiorari, which the United States Supreme Court denied on March 8, 2004. Under these circumstances, the clearly established federal law against which the Oregon Court of Appeals' decision must be measured is *Roberts*, not *Crawford*. *See Greene*, 132 S.Ct. at 43-44 (Supreme Court ruling issued after state court of appeals decision on merits and while petition for allowance of discretionary appeal was pending before highest state court was not clearly established for purposes of § 2254;

instead, law at time state court of appeals issued decision on merits set standard by which that decision would be measured).

As noted, under *Roberts* admission of a hearsay statement does not violate the Confrontation Clause where the witness is shown to be unavailable if "the evidence falls within a firmly rooted hearsay exception," or if there are other "particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything to the statements' reliability." *Roberts*, 448 U.S. at 66. (internal citations omitted). The "firmly rooted" hearsay exception is "designed to allow the introduction of statements falling within a category of hearsay whose conditions have proved over time to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath and cross-examination at trial." *Lilly v. Virginia*, 527 U.S. 116, 126 (1999) (internal quotation marks omitted).

Here, Petitioner does not dispute that the "state of mind" hearsay exception is considered firmly rooted. *See Terrovona*, 852 F.2d at 427 (admission of hearsay statement of declarant's state of mind under provision of Washington evidence code fell within firmly-rooted hearsay exception); *see also Horton v. Allen*, 370 F.3d 75, 85 (1st Cir. 2004) ("[t]he state-of-mind exception has been recognized by the Supreme Court . . . for over a century") (citing *Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285, 295-96 (1892)). Petitioner argues, however, that the victim's statements did not fall within the state-of-mind exception, and that they were not supported by particularized guarantees of trustworthiness.

State court rulings on the admissibility of evidence generally are not within the scope of federal habeas review, which is designed only to remedy violations of federal law. *See* 28 U.S.C.

23 - FINDINGS AND RECOMMENDATION -

§ 2254(a); *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967). As such, Petitioner cannot obtain habeas

relief on the grounds that the Oregon courts wrongly found that the letters and statements admitted

at trial either were not hearsay or fit within Oregon's state-of-mind exception to hearsay. *Winzer*,

494 F.3d at 1198; *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("we reemphasize that

it is not the province of a federal habeas court to reexamine state court determinations on state law

questions").

      Where, however, a Confrontation Clause is alleged, "federal courts can go beyond a state

court's characterization and analyze whether a factual basis supports the state court's decision."

*Winzer*, 494 F.3d at 1198. Accordingly, this Court must analyze the record to determine whether

a sufficient factual basis supports the state court's conclusion that the victim's letters and statements

went to her state-of-mind and therefore were not subject to exclusion under the hearsay rule. *Id.*

at 1199-1201. In performing this analysis the Court is mindful of the deference owed to the state

courts' fact-finding under § 2254(d)(2). *See Paxton v. Ward*, 199 F.3d 1197, 1207-11 (10th Cir.

1999) (court applied § 2254(d)(2) and held that state court made an unreasonable determination of

the facts when it found that the statement in question was an excited utterance for purposes of the

Confrontation Clause).

      Under Oregon law, "hearsay" is "a statement, other than one made by the declarant while

testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Or. Evid.

C. 801(3). The state-of-mind exception to the hearsay rule is codified at Or. Evid. C. 803(3):

> A statement of the declarant's then existing state of mind, emotion, sensation or
> physical condition, such as intent, plan, motive, design, mental feeling, pain or
> bodily health, but not including a statement of memory or belief to prove the fact

remembered or believed unless it relates to the execution, revocation, identification, or terms of the declarant's will.

Under Oregon law, "statements that constitute circumstantial evidence of the declarant's state of mind, as well as statements directly addressing the declarant's state of mind, are hearsay assertions admissible under [Or. Evid. C.] 803(3)." *State v. Voits*, 186 Or. App. at 658, 64 P.3d at 1166 (citations omitted).

Prior to Petitioner's criminal trial, the trial judge conducted a hearing on the admissibility of the 42 postcards and letters proffered by the state as to the victim's state of mind to disprove suicide by showing the victim had no suicidal tendencies or suicidal ideation. Resp. Supp. Trans., p. 38. In a painstaking process, the trial judge went through each postcard and letter and redacted any content he found inadmissible. Resp. Supp. Transc., pp. 38-163. The Oregon Court of Appeals reviewed the record and rejected Petitioner's argument that the content of the letters and postcards admitted into evidence were hearsay and did not constitute either direct or circumstantial evidence of the victim's state of mind or future intentions.[3]

With respect to the Petitioner's argument that much of the information in the postcards and letters which the trial judge deemed contextual or "background" material, and therefore not hearsay, the Court of Appeals found:

---

[3] The Oregon Court of Appeals also rejected Petitioner's two other challenges to the admissibility of the letters and postcards: (1) that the letter and postcard evidence was not relevant because contextual and background information about the victim's life because it did not make it more probable or less probable that Petitioner killed her or that she killed herself; and (2) that the evidence should have been excluded under Or. Evid. C. 403 because the probative value was substantially outweighed by the danger of unfair prejudice in admitting them. Neither of these claims are before the Court in this habeas corpus action.

> [M]uch of the contextual or "background" material discussed above in regard to
> [Petitioner's] relevance arguments simply was not hearsay. That is because,
> although the material was relevant as an aid to understanding, it constituted neither
> direct nor circumstantial evidence of the victim's state of mind or future intentions,
> and therefore was not offered to prove the truth of the matters asserted.

*Voits*, 186 Or. App. at 658; 64 P.3d at 1166.

The Court of Appeals discussed at greater length the issue whether the evidence in the

letters and postcards that was hearsay fell within the "state-of-mind" exception to the hearsay rule.

The court rejected Petitioner's arguments that the declarations almost all related to *why* the victim

had a particular state of mind or future intent, rather than *what* that state of mind or future intent

was and that many of the declarations were offered to establish Petitioner's own state of mind and

predict his conduct, purposes not permitted under Or. Evid. C. 803(3). After reciting the entirety

of one particular letter from the victim to her divorce attorney, the court concluded:

> We also conclude that the remainder of the victim's declarations, although hearsay,
> were admissible as either direct or circumstantial evidence of the victim's state of
> mind or future intentions. Specifically, some of the declarations were admissible
> to show the victim's positive outlook on, or hopes for, the future, in contrast to
> defendant's statements that she was suicidal; the victim's December 11 declaration
> typified that purpose. Other declarations—such as the victim's December 28 letter
> to her attorney, quoted in full above, and her statements to Sils that "[defendant] is
> old-fashioned, chauvinistic, [and] arrogant" and that defendant has "wounded my
> heart and soul"—demonstrated, either directly or circumstantially, the victim's
> intention to follow through with the dissolution of her marriage. Moreover, the
> statements were admitted for those purposes and not, as defendant asserts, to prove
> facts about defendant that the victim remembered or believed, or to show
> defendant's own future conduct.

*Voits*, 186 Or. App. at 658-59; 64 P.3d at 1166-67.

The Oregon Court of Appeals' determination that the background or contextual content of

the letters and postcards was not hearsay, and that the declarations contained in the letters and

postcards which were hearsay nonetheless fell within the state-of-mind exception is supported by the factual bases in the record. Because the record establishes both that the declarant was unavailable and that her statements fell within a firmly-rooted hearsay exception, there was no constitutional violation resulting from the admission of the un-redacted contents of the letters and postcards into evidence at Petitioner's trial.

Even if the trial court had erred in admitting the un-redacted contents of the letters and postcards into evidence, any such error was harmless. Confrontation Clause violations are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). On collateral review, an error is not "harmless" if it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In determining whether an error is harmless, the question is "what effect the error had or reasonably may be taken to have had upon the [fact-finder's] decision.'" *Wade v. Calderon*, 29 F.3d 1312, 1322 (9th Cir. 1994) (quoting *Brecht*, 507 U.S. at 642-43 (Stevens, J., concurring)), *overruled on other grounds by Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 815 (9th Cir. 2003). An error is not harmless if a reviewing court is "in grave doubt" as to whether the error had "substantial and injurious effect or influence." *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995).

The Oregon Court of Appeals' opinion recited the limiting instruction given by the trial judge to the jury regarding the contents of the letters and postcards:

> Testimony and exhibits have been offered into evidence regarding purported statements of the [victim]. You must first determine whether or not [the victim] made the statements. If you find that she made the statements, then you may consider them only for the purpose of determining what her then existing mental or emotional condition was, or her then existing intent or plans.

Some of the statements offered do not directly address her state of mind or intent. These statements, if made, are not offered for the truth of the matters contained in them, but merely for context to explain the statements that directly address her state of mind, intent, or plans.

I caution you that in evaluating all statements of [the victim] that are offered, that she is not available to be examined concerning her knowledge or lack of knowledge regarding the matters of which she speaks, her reasons for making the statements, and the circumstances in which the statements were made.

Some of the purported statements of [the victim] deal with alleged statements that the defendant * * * made. And regarding those statements, I have the further cautionary instruction:

When a witness testifies about statements made by the defendant, you should consider such testimony with caution. In reviewing such testimony, you should consider, among other things, the following:

Did the defendant make the statement? And, if so, did the defendant clearly express what he intended to say?

Did the witness correctly hear and understand what the defendant said?

Did the witness correctly remember and relate what the defendant said?

Did the witness intentionally or mistakenly alter some of the words used by the defendant, thereby changing the meaning of what was actually said?

And that's the cautionary instruction.

*Voits*, 186 Or. App. at 659-660, 64 P.3d at 1167.

In discussing whether the probative value of the victim's declarations was outweighed by the danger of unfair prejudice, the court concluded:

The instruction given in this case admonished the jury to consider the victim's declarations only for the purposes of determining either her then-existing mental or emotional condition or her intent or plans. It also informed the jury that declarations that constituted circumstantial evidence of the victim's state of mind could not be considered for the truth of the matters asserted but, rather, were offered merely as context to explain the declarations that directly addressed the victim's

28 - FINDINGS AND RECOMMENDATION -

state of mind, intent, or plans. Moreover, very few of the victim's declarations that were admitted in evidence referred directly to defendant's conduct and, of those that did, they did not refer to specific acts. Under the circumstances, the limiting instruction was sufficient to prevent any prejudice that otherwise might result from admission of the challenged declarations or, even if there was prejudice, prevented it from substantially outweighing their probative value.

*Voits*, 186 Or. App. at 660-61, 64 P.3d at 1167-68.

This court finds the Oregon Court of Appeals' conclusion informative on the issue of harmless error. Moreover, while the letters and postcards were certainly of assistance to the jury's consideration of Petitioner's trial argument that the victim killed herself, there was significant and ample direct evidence for the jury to have found the Petitioner guilty without the letters. The forensic evidence presented by the prosecution at trial did not support Petitioner's theory that the victim committed suicide. Petitioner availed himself of the opportunity to testify at trial, and his credibility was readily impeached multiple times by the prosecution.

Introduction of the un-redacted contents of the letters and postcards did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Accordingly, even if the trial court erred in admitting the evidence in question, any such error was harmless. Petitioner is not entitled to habeas corpus relief on his Confrontation Clause claim alleged in Ground Two.

**B.    Ground Three - Ineffective Assistance of Counsel**

Under *Strickland v. Washington*, to prevail on a claim of ineffective assistance of counsel, a petitioner must prove: (1) counsel's performance fell below an objective standard of reasonableness and, (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. 668, 687–88 (1984); *Bell*

*v. Cone*, 535 U.S. 685, 695 (2002); *Williams*, 529 U.S. at 390–91. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Williams*, 529 U.S. at 391 (quoting *Strickland*, 466 U.S. at 694). Failure to make the required showing on either prong defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 697.

For the performance prong, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Moreover, "a court must indulge [the] strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment." *Pinholster*, 131 S.Ct. at 1407 (quoting *Strickland*) (internal quotation marks omitted). The reasonableness of counsel's conduct must be evaluated in light of the facts of the case and the circumstances at the time of representation. *Strickland*, 466 U.S. at 690.

Finally, a doubly deferential standard of review applies to federal habeas review of ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420 (2009); *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (deference under § 2254 and deference under *Strickland*). Petitioner must prove that there is no reasonable argument that counsel satisfied *Strickland's* deferential standard. *Premo v. Moore*, 131 S.Ct. 733, 740 (2011); *Harrington*, 131 S.Ct. at 788.

### 1.      Sub-Part (a) - Failure to Subpoena Witnesses

Petitioner argues trial counsel was constitutionally ineffective because he failed to subpoena Petitioner's two minor children to testify at trial. Petitioner raised this claim in his state PCR proceeding, and in support thereof he testified in his deposition that if his minor sons had been subpoenaed to testify at trial, they would have corroborated his story regarding the victim's state

of mind and other aspects of his defense.  In response, the State offered an affidavit from trial

counsel in which counsel explains the tactical decision not to subpoena the children:

> The children as witnesses.  Every reasonable effort was made to interview
> the children who were in custody of their grandparents. The grandparents would not
> give us access to them.

> On or about April 12, 2000, a motion was filed to allow a defense interview
> with petitioner's children and attached to that motion as Exhibit 1 was
> documentation of our private investigator's efforts to interview them.  It was a
> tactical decision not to call the children not knowing what their testimony would be.

Resp. Exh. 20, p. 2.

The PCR trial judge considered this information in the context of the entire trial record and

made the following findings at the PCR evidentiary hearing:

> Let me address the issues regarding failure to investigate first.  The --
> counsel was not able, although counsel did make every effort that I can see, to
> compel and interview with the children.  He was faced then with a tactical decision
> of subpoenaing them and possibly being able to talk to them, but possibly not being
> able to, and just putting them on stand [sic] and see -- and seeing what would
> happen.  In my opinion, this would have been a terrible tactic.  There's no evidence
> as to what they would have actually testified to other than what petitioner believes.
> And in any event, this was trial tactic.  The -- placing these little children before the
> jury certainly could have resulted in the jury having an increased sympathy for -- for
> them, and would not -- and -- and at this point anyway, coun -- the defendant's
> [petitioner] not able to present any evidence that they would have testified as to
> something that would have been exculpatory or changed the outcome.

Resp. Exh. 127, pp. 35-36.  The PCR trial judge concluded:

> The bottom line here as far as trial counsel, your trial counsel was not
> ineffective as a matter of law. . . .  You're not able to show in your -- in the record
> here how things would have been different as a result of something your attorney
> didn't do.  And I would note that at trial your attorney did a remarkable job given
> the evidence against you, fighting every inch of the way, and I -- I'm simply not able
> to find that trial counsel was incompetent.

Resp. Exh. 127, p. 37.

The PCR judge's conclusion that trial counsel was not constitutionally ineffective in failing to subpoena the minor children was not contrary to or an unreasonable application of *Strickland*. Other than his own self-serving statements, Petitioner failed to present any evidence to the PCR court of what the children would have testified to under oath. Accordingly, Petitioner failed to establish counsel was ineffective and that he was prejudiced by counsel's failure to subpoena the minor children. *See Dows v. Wood*, 211 F.3d 480, 486 (9th Cir.) (finding petitioner's self-serving affidavit with no affidavits from the purported witnesses was insufficient to establish ineffective assistance of counsel), *cert. denied*, 531 U.S. 908 (2000); *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (in order to demonstrate prejudice a petitioner must show what witnesses would have testified to and how it would have changed the outcome). Accordingly, Petitioner is not entitled to habeas corpus relief on the claim alleged in Ground Three(a).

### 2. Sub-Parts (b) and (d) - Sweater Evidence and Failure to Impeach

In sub-part (b) of his Petition, Petitioner alleges trial counsel was ineffective because he failed to "refute the state's fabricated but damning 'sweater evidence.'" In sub-part (d), he alleges trial counsel failed to "impeach key state's witnesses for knowing use of false evidence & testimony at trial." Because it appears from the underlying state proceedings and the *Pro Se* Brief in Support that these two claims are inter-related, they are combined for the purposes of discussion here.

Petitioner faults counsel for failing to establish at trial that Petitioner was not wearing a sweater when his wife died, as one of the investigating officers testified Petitioner originally informed him. Instead, Petitioner alleges, he was wearing a blue shirt.

In his deposition in the PCR proceeding, Petitioner took issue with trial counsel's failure to impeach the state's forensic evidence witness testimony about trace amounts of blood found on the sweater. Petitioner stated this was relevant because he was not wearing the sweater, that there might not have been blood on the sweater, that for all he knew his wife could have been wearing the sweater that day, and on that afternoon she had a nose-bleed which could have explained the presence of blood on the sweater. Resp. Exh. 119, pp. 20-21.

At trial, however, an officer testified that when asked what he was wearing that night Petitioner told him blue jeans, a blue shirt, a sweater, and socks but no shoes. Trans., April 25, 2000, p. 53. The police seized a pile of clothing from Petitioner's side of the bed, the location Petitioner identified as the place he dropped his clothes before going to bed, which included a pair of blue jeans, a blue sweater, and a pair of socks. *Id.*

In the state PCR proceeding, trial counsel's affidavit addressed this claim as follows:

> On or about December 6, 1999, and March 23, 2000, we filed a motion in limine to imit the state's use of scientific evidence, including evidence pertaining to the sweater. This evidence was also examined by our forensic expert. The admissibility of the evidence was litigated prior to trial as part of an extended omnibus hearing.

> We attempted to impeach the state's theory that petitioner was wearing the blue sweater. The only evidence available for such impeachment was petitioner's testimony.

Resp. Exh. 120, p. 4.

The sweater and other forensic evidence were the subject of months of testing and the subject of numerous pre-trial hearings. Petitioner's attorney attempted to have the State's evidence regarding the testing results from the sweater excluded. Trial counsel presented expert testimony

counter to that of the State's experts to establish that the tests conducted on the sweater were not

conclusive for blood splatter, but rather merely presumptive tests. Petitioner's attorney was partially

successful, but the trial court did permit the state's experts to testify regarding the presumptive test

findings.

The PCR trial judge denied relief on this claim, finding that "[t]he coun- counsel did

impeach and challenge the evidence at the OSP lab about the shirt." Resp. Exh. 127, p. 36. The

PCR judge's subsequent conclusion that trial counsel did not provide constitutionally ineffective

assistance of counsel was not contrary to or an unreasonable application of *Strickland*.

Accordingly, habeas corpus relief should be denied on the claims alleged in sub-parts (b) and (d).

### 3.    Sub-Part (c) - Evidence of Adultery

In Ground Three(c), Petitioner alleges counsel was constitutionally ineffective based on the

failure "to produce evidence of the decedent's adultery & resultant dilemma caused by the

impending discovery of her acquired STD, at trial, on her state of mind." Petitioner testified in his

PCR deposition that he learned he had an STD only after his trial was complete and he was seeking

an appeal. Trial counsel attested to the same, stating: "[w]e first learned about the STD issue

during review of the opening appellate brief with petitioner. Petitioner mentioned the STD at that

time. Prior to that, petitioner gave no indication that he had an STD." Resp. Exh. 129, p. 3.

Petitioner nevertheless asserted in his PCR proceeding that counsel should have intuited that

Petitioner likely had contracted a sexually transmitted disease from the victim when Petitioner

informed counsel he was "having medical problems." Resp. Exh. 119, pp. 14-18. Petitioner argued

that, had this evidence been known, it would have exonerated him as it would have explained why

the victim had reason to kill herself; she was likely distraught at the prospect of Petitioner learning

of her infidelity.

The PCR judge rejected Petitioner's theory and found trial counsel was not ineffective. As

the judge explained:

> As far as the STD, the -- the defendant [petitioner] admits that counsel didn't
> know about it.  His attorney isn't a doctor.  He's not required to take medical
> symptoms that the client is complaining about and then follow up on those.  The
> defendant [petitioner] can do that himself.  And there aren't additional witnesses to
> support that claim.  He can't meet his burden here.  He can't show that any helpful
> evidence was lost.  And in fact, again, as far as a trial tactic, that could easily have
> backfired on him in terms of showing why he might have been very upset with his
> wife and wanted to do her in.

Resp. Exh. 127, pp. 36-37. The conclusion that counsel did not provide ineffective assistance under

these circumstances was not contrary to or an unreasonable application of *Strickland*.  Accordingly,

Petitioner is not entitled to habeas corpus relief on the claim alleged in Ground Three(c).


## RECOMMENDATION

For these reasons, the Petition for Writ of Habeas Corpus [#2] should be DENIED and

JUDGMENT of dismissal should be entered.

Because Petitioner has not made a substantial showing of the denial of a constitutional right,

a certificate of appealability should be DENIED.  *See* 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for

review.  Objections, if any, are due October 22, 2013.  If no objections are filed, review of the

Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 14 days after the objections are filed. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 8th day of October, 2013.

John V. Acosta
United States Magistrate Judge